UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiffs<br>V.<br><br>DOUGLAS WYATT et al.<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>: | 1:23—00215-RDM<br><br><br><br><br>JANUARY 26, 2024 |

## **DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Wyatt is now before the Court for sentencing after a plea of guilty to a single court of 18 U.S.C. Section 111(a)(1) and (b), Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon. The conviction arises from his participation in a demonstration-turned-riot at the United States Capitol on January 6, 2021. Mr. Wyatt harbored a belief, fostered by no less a person than the president of the United States, Donald J. Trump, that the results of the presidential election in November 2020 were fraudulent. He appeared at the Capitol on January 6, 2021 to protest, in the hope that members of Congress would not count the Electoral College votes until a further investigation could take place. He arrived at the Capitol with no intention or plan to engage in violence.

The United States Probation Office recommends a Guidelines sentence of 46 months. The government asks for 52 months. Mr. Wyatt asks for a non-Guidelines sentence of 24 months. Mr. Wyatt requests that no fine be imposed. His plea agreement requires that he pay $2,000 in restitution to the Architect of the Capitol.

I.   **Guidelines**

The United States Sentencing Guidelines are no longer mandatory, they are advisory in nature, and the Court must consider them in imposing a sentence. *United States v. Booker*, 543 U.S. 2220, 245-246 (2005.) The sentencing Court is required to consider the guidelines range, and then consider the factors laid out in 18 United States Code Section 3553(a). It is the Court's responsibility to impose a sentence sufficient, but not greater than necessary, to accomplish the goals of Section 3553(a). *Rita v. United States*, 551 U.S. 338, 347 (2007).

II.   **Sentencing Factors**

Section 3553(a) requires consideration of the following factors:

- The nature and circumstances of the offense and the history and characteristics of the defendant (subsection (a)(1));
- The need for the sentence to reflect the seriousness of the offense, promote respect for the law and to provide just punishment (subsection (a)(2)(A));
- The need for adequate deterrence to criminal conduct (subsection(a)(2)(B));
- The need to protect the public from further crimes by the defendant (subsection (a)(2)(C));
- The effort to assure rehabilitation of the defendant by such services as the Bureau of Prisons may provide (subsection (a)(2)(D)).

III.   **Guidelines Calculation**

The PSR calculates an adjusted guidelines offense level of 23, arrived at by means of the following calculation:

| | | |
|---|---|---|
| Base Offense Level:: | 14 | (USSG Section 2A2.2(a)) |
| Dangerous Weapon: | 4 | (USSG Section 2A2.2(b)(2)(B) |
| Conviction Under 111(b): | 2 | (USSG Section 2A2.2(b)(3)) |

2

    Official Victim:                 6        (USSG Section 3A1.2)

    Total Offense Level:       26

Acceptance of Responsibility:    -3       (USSG Section 3E1.1)

    Adjusted Offense Level:    23

Mr Wyatt falls into Criminal History Level 1. PSR 48.

Mr. Wyatt takes issue with the 6-point official victim adjustment under USSG Section 3A1.2. The applicable subsection seems to be section(c)(1) "knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." The Application Notes limit this section to "aggravated assault": "Subsection (c) applies in circumstances tantamount to aggravated assault … against a law enforcement officer, committed in the course of, or immediate flight following, another offense[.]"

The offense charged here is assaulting, resisting of impeding and police officer on a police officer. An aggravated assault is one done with a dangerous weapon and the intent to cause bodily injury. 2A2.2. It is not at all apparent from the face of this record that spraying in the direction of an officer with a chemical irritant is an intent to cause bodily injury. Even if it, were, however, subsection (c) suggests that the assault is "committed in the course or, immediate flight following, another offense." Simply put, the assault here is the offense itself, and, therefore, subsection (c) does not apply. As a result, the defendant believes that if an official victim enhancement is applied, it should be the enhancement under Section3A1.2(a)(a)(A) insofar as there is no dispute the victim was a "government officer or employee." As such, the

3

enhancement should be a 3-level enhancement, thus dropping the total adjusted offense level to Level 20.

A criminal history I guidelines sentence at an adjusted offense level of 20 is 33 to 41 months.

Because this plea was entered after November 1, 2023, the Court must consider USSG Section4C1.1, which calls for a two-level reduction for offenders without a criminal history. To be eligible for this reduction a defendant must neither have possessed a dangerous weapon nor induced another person to possess a dangerous weapon in connection with the offense. USSG Section 4C1.1(7).

The Government asserts two grounds for rejecting this reduction: first, Mr Wyatt possessed a chemical irritant and sprayed it in the direction of a law enforcement officer at the riot, and; second, he "facilitated violence" when he handed a 4x4 beam to his stepson. His stepson then threw the beam in the direction of police officers.[1] Gov't's Sentencing Memorandum at p. 21.

Section 7 suggests rejection of the benefit of a reduction in penal consequences to those whose conduct evinces an intent to use violence. Thus, a person who possesses, receives, purchases, transports, transfer or sells a dangerous weapon in connection with an offense is ineligible. In this case, Mr. Wyatt did not purchase, transport, transfer or sell anything – he found an abandoned cannister at the scene of a riot and sprayed it in the direction of an officer. It is true that in so doing he "possessed" it. But he did not receive it from another. His use of it did not result in serious bodily injury.

---

[1] His stepson Jacob Michael Therren was sentenced to 40 months incarceration, Para. 25.

4

There are good reasons to suggest that the conduct at issue falls outside the heartland of what the Sentencing Commission had in mind in drafting this amendment.

Mr. Wyatt requests the application of Section 4C1.1. If applied, his guidelines sentencing range becomes 27-33.

### IV.     Offense Characteristics

There is no question that the protest on January 6, 2021 became a riot with violent features, but to suggest, as the Government has done repeatedly in an extraordinarily ambitious campaign of prosecutions, that the events were a threat to democracy itself requiring harsh penal consequences is overdone. Attempts to castigate Mr. Wyatt by repeated reference to the crowd and what other rioters did obscures a fundamental point: People had every right to appear at the Capitol to petition for redress of grievances, even if those grievances were more imagined than real in hindsight. Mr. Wyatt did not plan an insurrection and he did not contemplate sedition. He appeared at a protest and was swept up in events that, in his instance, turned violent. The sentence in this case should reflect the seriousness of his offense, not the Government's determination to send a message to the public at large.

### V.      Mr. Wyatt's Characteristics

Mr. Wyatt is married and is the father of one adult child. He helped to raise the two adult children of his second wife, Gina Wyatt, whom he married in 2005. One child, not the co-defendant with whom he traveled to the Capitol on January 6, 2021, attempted suicide at 16. PST, Paras. 55-60, 69. The couple resides in Baltimore Maryland. Mr. Wyatt is a man of deep religious

convictions, who has relied on his religious faith during difficult periods in his life, including his arrest the almost certain incarceration here. Id., para. 69. He has struggled with, overcome, substance abuse involving regular use alcohol and marijuana. Id., para. 71-72. He is 50 years old. Id., p. 2.

After leaving high school because of behavioral issues, Mr. Wyatt obtained a GED. Id., para. 75. He is a construction worker. And has a sustained employment history. Id., paras. 78-80.

As part of his plea agreement, the defendant agreed to be debriefed by federal agents about his activities on January 6, 2021. Id., paras. 90-91. .He sat for the required interview and voluntarily provided passwords for his electronic device to assist law enforcement. He expressed regret for his activities on January 6, 2021.[2]

### VI.   General Deterrence

The scope and extent of the Government's prosecution of rioters at the Capitol on January 6, 2021 militates against any need for general deterrence as a factor in this sentencing. Press accounts relate that more than 1200 persons have thus far been charged with offenses arising from the hours-long disturbance that day. Indeed, the United States Attorney for the District of Columbia recently held a conference at which he proclaimed that there are still more prosecutions to come. Apparently, the investigation of the event is ongoing. If there is an American alive who today believes that a similar riot will be tolerated in the future, that person does not read or listen

---

[2] The undersigned monitored the debriefing with Mr. Wyatt, and makes the representations recited herein about what took place at the debriefing as an officer of the Court.

to the news.

### VII. Specific Deterrence

Although Mr. Wyatt has zero criminal history points, he does have a history of involvement with the criminal justice system. PSR, para. 44-52. The offenses range from motor vehicle matters, to possession of marijuana and disorderly conduct. The marijuana and disorderly conduct charges took place in his late teens and late twenties. The motor vehicle charges are well over a decade ago. This is his first interaction with the federal criminal justice system and will likely result in his first prison sentence.

It is unlikely that he presents a risk of recidivism. He related at his debriefing that he was caught up in the moment. These proceedings alone have been an enormous source of stress to both the defendant and to his wife. Id., para. 69. He has been informed of the nature and operation of the sentencing guidelines and has been stoic in contemplation of the likely consequences of this conviction. Throughout the proceedings, he has been fully compliant with his conditions of release.

Mr. Wyatt appreciates the seriousness of the charges. Indeed, he pleaded guilty to a criminal information, and did not require the Government to seek an indictment. He entered a guilty plea, participating in the required debriefing and providing password to his social media accounts.

### VIII. Rehabilitation

Mr. Wyatt is gainfully employed and is a responsible and productive member of society. He is insight-oriented about his substance abuse and mental health challenges. He enjoys the support of a loving spouse to whom

7

he has been married for many years. He is capable of giving and receiving love. This is not a case involving special rehabilitative needs. The Court may consider not imposition the Parenting Program within the Bureau of Prisons despite the recommendation of the PSR author. Candidly, the need for the program is not obvious. Mr. Wyatt's children are adults. Indeed, one of his stepsons will likely be incarcerated at the same time.

### IX.   Remorse and Cooperation

Mr. Wyatt will address the Court in his own words at the time of sentencing so that the Court can assess for itself his remorse and contrition.

### X.   Reasons for a Non-Guidelines Sentence

No victim has stepped forth to say he or she was injured or otherwise affected by Mr. Wyatt's conduct. This distinguished him in some regard from the cohort of other defendants who have pleaded to similar charges. Id., para. 114. Rare is the assault without an individual to describe the trauma of the assault.

The restitution to the Architect of the Capitol in the amount of $2,000 is a more or less routine assessment on January 6 defendants in general. It reflects an overall assessment of damage to the Capitol building in the amount of approximately $2.9 million, a significant sum, but far less than what one would expect from an attack described by some as a insurrection intended to undermine the pillars of our Government. Replacement costs of things like windows and perimeter fences are significant at the Capitol.

The guidelines require a sentence sufficient to reflect the seriousness of the conduct, but no greater than necessary to accomplish that task. Mr.

Wyatt contends that the guidelines sentence overstates the significance of the conduct for which Mr. Wyatt was actually convicted. To a dangerous extent the Government's sentencing papers in this and related case seek to impose something like guilt by association or collective guilt. Yes, Mr. Wyatt was part of a much larger crowd. But the crowd is not being sentenced here; Mr. Wyatt is.

## XI. A Sentence of Two Years

Mr. Wyatt requests a sentence of two years imprisonment and no imposition of a fine.

THE DEFENDANT

By /s/ Norman Pattis /s/
NORMAN PATTIS
Pattis & Associates, LLC
383 Orange Street New
Haven, CT 06511 Tel: 203-393-3017
Fax: 203-393-9745
npattis@pattislaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the foregoing date, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

_____/s/ NORMAN PATTIS_____